IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 09-cr-00383-PAB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. ROBERT B. KNOWLTON,

    Defendant.

---

## PLEA AGREEMENT AND STATEMENT OF FACTS RELEVANT TO SENTENCING

---

The United States of America (the government), by and through, Robert E. Mydans, Assistant United States Attorney for the District of Colorado, and the defendant, Robert B. Knowlton, personally and by counsel, Jeffrey S. Pagliuca, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to D.C.COLO.LCrR 11.1.

### I. PLEA AGREEMENT

The defendant agrees to plead guilty to Counts One and Two of an Information filed in open Court on August 17, 2010, charging violations of 16 U.S.C. § 470ee(b)(2) and 18 U.S.C. § 2.

This plea agreement is entered into by the parties pursuant to the provisions of Fed. R. Crim. P. 11(c)(1)(B). Each party is free to recommend to the court an appropriate sentence, based upon the factors outlined in Section 3553 of Title 18, United States Code, and the United States Sentencing Guidelines. The parties understand and agree that the United States Sentencing Guidelines are to be consulted by the sentencing court, but that they are not mandatory and are, but



Court Exhibit 7

one factor the sentencing court will take into account in fashioning an appropriate sentence in this case.

## II. ELEMENTS OF THE OFFENSE(S)

The elements of the two counts for which the defendant has agreed to enter pleas of guilty are

Count One:

1. That the defendant knowingly sold an archaeological resource valued at less than $500, to wit: a cloud blower pipe that was of archaeological interest and at least 100 years of age; and

2. That the archaeological resource had been removed from Federal Land, to wit: Bureau of Land Management land in Utah, without a permit and without permission.

Count Two:

1. That the defendant knowingly caused the transportation in interstate commerce from Colorado to Utah of an archaeological resource valued at less than $500, to wit: a cloud blower pipe that was of archaeological interest and at least 100 years of age; and

2. That the archaeological resource had been removed from Federal Land, to wit: Bureau of Land Management land in Utah, without a permit and without permission.

## III. STATUTORY PENALTIES

The maximum statutory penalty for a violation of 16 U.S.C. § 470ee is: not more than one year imprisonment; not more than $10,000 fine, or both; not more than 1 year supervised release; $25 special assessment fee; plus restitution, if applicable.

A violation of the conditions of probation or supervised release may result in a separate

prison sentence.

## IV. STIPULATION OF FACTUAL BASIS AND FACTS RELEVANT TO SENTENCING

The parties agree that there is no dispute as to the material elements which establish a factual basis of the offense of conviction.

Pertinent facts are set out below in order to provide a factual basis of the plea and to provide facts which the parties believe are relevant, pursuant to §1B1.3, for computing the appropriate guideline range. To the extent the parties disagree about the facts relevant to sentencing, the statement of facts identifies which facts are known to be in dispute at the time of the plea. (§6B1.4(b))

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein which are relevant to the guideline computation (§1B1.3) or to sentencing in general (§1B1.4). In "determining the factual basis for the sentence, the Court will consider the stipulation [of the parties], together with the results of the presentence investigation, and any other relevant information." (§6B1.4 Comm.)

The parties agree that the government's evidence would show that the date on which conduct relevant to the offense (§1B1.3) began is July, 2008.

The parties agree that the government's evidence would be:

The "cloud blower" pipe was purchased as evidence by Ted Gardiner from Robert "Bob" Knowlton for $750 during an undercover meeting on July 17, 2008 and is described as a polished, oblong, sandstone "cloud blower" style pipe. The rim of the bowl has a U-shaped chip (see photo). The pipe measures 2.5 inches (6.5 cm) in length by 1.00 inch (2.5 cm) in width. The pipe weighs

3

1.58 ounces. The "cloud blower" pipe is complete and shows no sign of major breakage or repair.



The "cloud blower" pipe was found during the excavation of the Big Westwater Ruin, site 42SA6752. The Big Westwater Ruin is located entirely upon public lands administered by the Bureau of Land Management in southeastern Utah, just southwest of Blanding. The State of Utah Antiquities Section, Division of State History did the excavation work from 1979 to 1980. A photo of the pipe is included in the BLM Cultural Resource Series (book) No. 9, Excavation of Two Anasazi Sites in Southern Utah 1979-1980. Lamar W. Lindsay, an archaeologist employed by the State of Utah, wrote the majority of the article in the book regarding the Big Westwater Ruin. Lindsay was also the field supervisor of the excavation work taking place at the Big Westwater Ruin.

The pipe was originally identified as a clay pipe in the BLM Cultural Resources Series book. A BLM Archaeological Evaluation Team (Team) determined upon visual and microscopic inspection that the pipe is manufactured from sandstone. Based on their education, knowledge and professional judgment, the archaeological evaluation team identified the artifact as the

material remains of past Native American culture, it is over 100 years of age. Initially the team valued the pipe at $110 based on a dated source of information. Investigation by a Team member subsequently found two comparable artifacts for sale at on-line auction or sale sites that were for sale at $255 and $300 respectively. Cost of restoration and repair was estimated at $383.89 by the Team. The value of the pipe's commercial value can be placed between $110 to $750 without restoration and repair or from $493.89 to $1133.89 with restoration and repair added. Under the Archaeological Resources Protection Act., restoration and repair can be added to determine the value of an artifact for charging purposes.

During the undercover meeting referenced above, Knowlton told Gardiner he obtained the pipe from Lindsay's sister who was selling the pipe after the death of Lindsay. Knowlton showed Gardiner a copy of the BLM Cultural Resources book No. 9 to verify the authenticity of the pipe. As mentioned above, there is a photo of the pipe in the BLM Cultural Resources book No. 9 on page 129. During the undercover meeting, Knowlton gave Gardiner the copy of the BLM Cultural Resources book No. 9 and physically showed Gardiner the photo of the pipe after searching for the page which Knowlton had separated from the book and had placed in a plastic sleeve. Knowlton sold Gardiner the pipe for $750 based on having an exact province or location of discovery.

During the undercover meeting, Gardiner asked Knowlton if he would mail the items purchased to include the "cloud blower" pipe and Knowlton agreed to. On July 18, 2008, Knowlton mailed the "cloud blower" pipe and other items of evidence purchased by Gardiner to Gardiner's Post Office Box in Kamas, UT. Gardiner subsequently signed for and picked up the package containing the evidence at the Post Office in Kamas, UT on July 25, 2008. Gardiner

5

took the sealed package from the Kamus, Utah Post Office to the Salt Lake City FBI Office where it was opened and photographed. The contents, including the Cloud blower pipe, were logged into evidence.

During the investigation, a copy of the field notes from the excavation work done at the Big Westwater Ruin was obtained from the Utah Museum of Natural History (UMNH). The field notes identified a clay pipe being found at the site and it was subsequently identified with field specimen number FS-6. During additional investigation, it was learned from the UMNH that the clay pipe was never accessioned to the UMNH along with the other artifacts discovered during the excavation of the Big Westwater Ruin.

## V. SENTENCING COMPUTATION

Any estimation by the parties regarding the estimated appropriate guideline application does not preclude either party from asking the Court to depart from the otherwise appropriate guideline range at sentencing, if that party believes that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the sentencing guidelines. (§5K2.0)]

The parties understand that the Court may impose any sentence, up to the statutory maximum, regardless of any guideline range computed, and that the Court is not bound by any position of the parties. (§6B1.4(d)) The Court is free, pursuant to §§6A1.3 and 6B1.4, to reach its own findings of facts and sentencing factors considering the parties' stipulations, the presentence investigation, and any other relevant information. (§6B1.4 Comm.; §1B1.4)

To the extent the parties disagree about the sentencing factors, the computations below identify the factors which are not in dispute. (§6B1.4(b))

  A.  The base guideline is § 2B1.5, with a base offense level of 8.

  B.  No specific offense characteristics apply.

  C.  No Chapter Three Adjustments apply.

  D.  The adjusted offense level would therefore be 8.

  E.  The defendant should receive the two level adjustment for acceptance of responsibility. The resulting offense level would therefore be 6.

  F.  The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court. Known facts regarding the criminal history are as follows: it is believed that this defendant has no prior criminal history which would impact the sentencing guidelines. Based on that information, if no other information were discovered, the defendant's criminal history category would be I .

  G.  Assuming the (tentative) criminal history facts of (F) above, the career offender/criminal livelihood/armed career criminal adjustments would not apply.

  H.  The guideline range resulting from the estimated offense level(s) of (E) above, and the (tentative) criminal history category of (F) above, is 0-6 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level(s) of (E) above could conceivably result in a range from 0 months (bottom of Category I), to 18 months (top of Category VI). The sentence would be limited, in any case, by the statutory maximum of one year imprisonment.

  I.  Pursuant to guideline §5E1.2, assuming the estimated offense level of (E) above, the fine range for this offense would be $ 500 to $ 5,000, plus applicable interest and penalties.

  J.  Pursuant to guideline §5D1.2, if the Court imposes the term of supervised release,

that term shall be not more than one year.

## VI. WHY THE PROPOSED PLEA DISPOSITION IS APPROPRIATE

The parties believe the sentencing range resulting from the proposed plea agreement is appropriate because all relevant conduct is disclosed, the sentencing guidelines take into account all pertinent sentencing factors with respect to this defendant, and the charges to which the defendant has agreed to plead guilty adequately reflect the seriousness of the actual offense behavior.

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 8-17-10

Robert B. Knowlton
Defendant

Date: 8-17-2010

Jeffrey S. Pagliuca
Attorney for Defendant

Date: 8/17/2010

Robert E. Mydans
Assistant U.S. Attorney

8